## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANDREA RAMIREZ PEREZ, an individual,

     Plaintiff,

                                   Case No.:

vs.


AEROTEK, INC., a for-profit Corporation,

     Defendant.

_____/

### VERIFIED COMPLAINT & DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Andrea Ramirez Perez ("Plaintiff"), by and through her undersigned counsel, and brings this complaint against Defendant, Aerotek, Inc. ("Aerotek"), and pleads the following causes of action: negligence, negligent misrepresentation, and violations of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a) & -3(a), and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. Section 760.01 *et seq*. In support hereof, Plaintiff respectfully alleges as follows:

### JURISDICTION, PARTIES, AND VENUE

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367, and 42 U.S.C. §2000e-5(f)(3).

2.     Plaintiff is an individual who resides in Hillsborough County, Florida, is a female and Hispanic American, and is a former employee of Aerotek.

3.     Defendant Aerotek is an entity incorporated in the State of Maryland, that operates an office in Tampa, Hillsborough County, Florida, with a business address of 4301 West Boy Scout Blvd, #520, Tampa, FL 33607 (the "Office").

4.     This Court has personal jurisdiction over Aerotek pursuant to the Florida Long-Arm Statute, § 48.193.  Aerotek conducts and is registered to do business inside Florida state lines, including through the Office, and maintains a registered agent in Florida.  Moreover, Aerotek committed tortious acts and omissions in Florida, which caused injury to Plaintiff in Florida.

5.     Relevant non-party Kareem Smith (hereinafter "Smith") is a former Aerotek supervisor and trainer of Plaintiff at the Office.

6.     Venue is proper in this Court pursuant to each of 28 U.S.C. § 1391(b)(1)-(2), 28 U.S.C. § 1391(c)(2), and 42 U.S.C. §2000e-5(f)(3).

### Facts Common to All Counts

7.     Plaintiff was employed by Aerotek between June 24, 2019, and circa August 28, 2019, as a trainee recruiter.

8.     Over the course of her brief employment with Aerotek, Plaintiff experienced misconduct at the hands of Aerotek, as well as co-worker and fellow Aerotek employee Smith.

9.     During Plaintiff's tenure of employment, Aerotek administered a policy at the Office, that it designed with the apparent intent to encourage and

2

build workplace camaraderie and loyalty among its employees for the ultimate benefit of Aerotek's revenues, particularly as to new employees like Plaintiff, to socialize with each other, including with Aerotek supervisors and trainers (like Smith), at and outside the Office, during and after work hours.

10.    Plaintiff was informed of this policy by Aerotek colleagues and management soon after she began her employment with Aerotek and prior to July 18, 2019, and was led to believe by Aerotek that it would be good for her Aerotek career to abide by this policy, and bad for her Aerotek career not to.

11.    In connection with this policy, Plaintiff accepted offers to socialize with Office personnel and management on multiple occasions in June and July 2019, prior to July 18, 2019; this included trips to bars and restaurants led by Aerotek personnel during and after work hours, during which Aerotek personnel consumed and encouraged Plaintiff to consume alcohol (which Plaintiff understood to be a part of Aerotek's team building strategy / policy), and during which work and work-related issues were discussed.

    a.  As well, prior to July 18, 2019, and at times thereafter, Plaintiff observed customary alcohol distribution to and consumption by Aerotek personnel at the Office, with the approval and, often, participation of Aerotek Office management and supervisory personnel, during and after customary business hours, which Plaintiff understood was also by Aerotek design to foster

socialization, camaraderie, and loyalty among Office employees, for the ultimate benefit of Aerotek revenues.

12.     Prior to July 18, 2019, Smith, acting as Plaintiff's supervisor and trainer, invited Plaintiff to attend a work event with him at a future date, representing it would be good for her Aerotek career.  Plaintiff understood this invitation to arise out of and be a part of Aerotek's above-pled employee policy promoting team building and workplace camaraderie.

13.     Plaintiff agreed to take Smith up on his offer, in material reliance on the fact that it was pursuant to an Aerotek policy, and because she wanted to be a good employee for an employer that she believed knew, and must have known, what it was doing in creating and administering such a policy.

14.     On July 18, 2019, Plaintiff attended an Aerotek-endorsed after-hours work event with her co-worker/supervisor Smith.

15.     Plaintiff would not have attended this work function had it not been approved, and she not been encouraged, by Aerotek for the purpose of building workplace camaraderie.

16.     In particular, Aerotek employees, including Office management, advised Plaintiff prior to July 18, 2019, that trainees like her are routinely encouraged by Aerotek to socialize, drink, and attend happy hours with co-workers, and other Aerotek trainees do so routinely.

4

17.     Smith was a supervisor of Plaintiff during her Aerotek training, including because she was directed by other Office supervisors to seek him out as a mentor prior to July 18, 2019, and because there were numerous occasions when Aerotek Office management was not available and Smith was left in charge of supervising Plaintiff, and was referred to as her supervisor.

18.     Based on material part on this supervisor-trainee relationship and Plaintiff's awareness of Aerotek's above-pled policies, Plaintiff agreed to Smith's request that they meet outside of the workplace for an Aerotek-approved, Aerotek-related event on July 18, 2019, rather than with younger colleagues whom she felt more comfortable or familiar with.

19.     Smith offered to drive Plaintiff to their July 18, 2019, work outing, and picked her up in his car at her residence to drive to a restaurant or bar within Hillsborough County to socialize.

20.     On July 18, 2019, during this work outing, Plaintiff and Smith visited two bars in Ybor City within Hillsborough County.

21.     The first bar was chosen by Plaintiff because she was uncomfortable with and declined patronizing the eventual second bar that Smith had insisted on attending.

22.     While at the first establishment, Plaintiff was speaking with two gentlemen in the manufacturing industry in an effort to network and establish business connections for her employment with Aerotek.

5

23.     Smith interfered with this interaction multiple times by interrupting the conversations to the point that the gentlemen asked Plaintiff if she was comfortable, since Smith seemed very unsettled.

24.     Smith, a supervisor of Plaintiff who had initiated this work-related event pursuant to Aerotek policy, insisted that Plaintiff accompany him to another bar where he represented that his friend tended bar.

25.     After entering the second establishment, Plaintiff was introduced to a bartender, Smith's friend, who served Plaintiff a drink after Smith insisted she have a drink with him.

26.     Within 20 minutes of drinking the provided drink, Plaintiff felt sick.

27.     Plaintiff went to the restroom in the bar and vomited, temporarily lost her eyesight, and collapsed to the floor while trying to compose herself.

28.     After a period of time, Smith entered the restroom with a server and assisted Plaintiff to her feet and escorted her out of the establishment back to her house.

29.     When Plaintiff and Smith arrived at Plaintiff's residence, Smith insisted on assisting Plaintiff into her home.

30.     Plaintiff told Smith that she did not want him inside of her house.

31.     Smith ignored Plaintiff, took possession of Plaintiff's key, opened her door, and escorted her into her apartment.

32.     Plaintiff, while likely under the influence of an unknown substance, told Smith that he needed to leave her residence.

33.     Plaintiff noticed that Smith had brought a bag with him into her home, as if he were inviting himself to stay over.

34.     Plaintiff could no longer stand and collapsed on her bed.

35.     Plaintiff observed Smith enter her bedroom and remove items of her clothing, including underwear, from her drawer within the room.

36.     Smith then approached the bed and began touching Plaintiff and removing her clothing.

37.     Smith ignored Plaintiff's requests to stop touching her.

38.     Smith then climbed into bed directly behind Plaintiff and assaulted her with his erect penis.

39.     Plaintiff lost consciousness.

40.     Plaintiff next remembers awakening in the morning of July 19, 2019, to observe Smith leaving her apartment.

41.     Plaintiff subsequently contacted her manager at Aerotek to report the events on July 18-19, 2019, including regarding being assaulted by Smith in her home arising out of an Aerotek work event.  The manager advised her to return to the Office and go to work as usual, alongside Smith, and that he would discuss the matter with her later as he was "on the road."

42.     Plaintiff filed a criminal complaint with the Tampa Police Department.

43.     Plaintiff filed for an injunction for protection.

44.     Plaintiff reported and notified Aerotek management, and Aerotek human resources, of the workplace-related sexual misconduct that had taken place at the hands of her supervisor Smith.

45.     Plaintiff made these reports to Aerotek management and human resources in material part based on her understanding, per Aerotek – including per Aerotek's employee handbook that Plaintiff received and reviewed prior to July 18, 2019 – that Aerotek had processes and safeguards in place to (1) take allegations of work-related sexual misconduct against an Aerotek colleague seriously, as well as (2) provide the reporting employee – Plaintiff – with reasonable protections, including privacy protections, and accommodations while it investigated her complaint.

46.     Aerotek's actual conduct – both at the Office and via its human resources team – in response to Plaintiff's report of the July 18, 2019, misconduct in question included:

> a. Informing Plaintiff that she will need to continue working with and alongside Smith during the pendency of Aerotek's investigation.
>
> b. Relocating Plaintiff adjacent to, rather than across from, Smith in the Office workplace.

8

c.   Refusing to allow Plaintiff to work from home – as an alternative to alongside her assailant at the Office – while the investigation, including the confirmed law enforcement investigation, continued.

d.   Having Smith continue to supervise Plaintiff because her manager was often unavailable.

e.   Informing Plaintiff via a phone call with a North Carolina-based Aerotek human resources representative that she should "forgive [Smith] because that is what Jesus would do."

f.   Inviting Plaintiff out to an expensive Tampa-area restaurant after work hours in the company of a management-level Office employee, during which that Office leader discussed Plaintiff's allegations against Smith and tried to convince her to sweep them under the rug.

g.   Refusing to suspend Smith or require him to work from home during the pendency of the investigation.

h.   Informing Plaintiff via Aerotek Human Resources that "she needs to understand that [Aerotek] will be sued no matter what they do because [Plaintiff is] Hispanic and [Smith] is African-American."

i.   Taking no steps to prevent or punish Smith from openly discussing and disparaging the allegations and Plaintiff in the Office with co-workers.

j.   Openly discussing Plaintiff's allegations with multiple non-managerial, non-HR Aerotek co-workers of Plaintiff and Smith, resulting in numerous Office colleagues approaching Plaintiff, some of whom sought to confront, harass, and intimidate her; others of whom asked questions about her allegations of Smith's sexual misconduct in an inquisitive, callous, and/or confrontational manner; and, in essence, fostering an environment where Office employees were "choosing teams" over Plaintiff's allegations of work-related sexual misconduct and trauma while the investigation was ongoing.

k.   Presenting Plaintiff with a "Hobson's choice" of continuing to work alongside her assailant or quitting her job.

47.   Based in material part on the above-pled actions of Aerotek in its response to her reporting Smith's work-related misconduct, Plaintiff resigned her position with Aerotek on or around August 28, 2019.

48.   During Aerotek's investigation, before Plaintiff was forced to resign, Smith admitted to Aerotek management that he did indeed remove Plaintiff's clothing while in her house circa July 18, 2019.

49.   Smith also admitted to removing Plaintiff's clothing on a controlled call with law enforcement, in what he claimed was "an effort to treat her like a sister and take care of her."

10

50.     Smith, after July 18, 2019, also apologized to Plaintiff at the Office for "what he did to her."

51.     At all points during her encounter with Smith on July 18, 2019, into July 19, 2019, Plaintiff worked for Aerotek and believed she was, as told, participating in an Aerotek-approved, Aerotek-related work event, pursuant to Aerotek and Office policy.

52.     As a result of (1) the sexual violence she endured at the hands of her supervisor at an Aerotek-approved, Aerotek-related work event on and after July 18, 2019; and (2) Aerotek's conduct when and after she reported to Aerotek, and Aerotek investigated, Smith's misconduct towards her, Plaintiff suffered and continues to suffer, representatively:  anxiety; insomnia; panic attacks; loss of appetite and weight; vomiting; nightmares; depression; recall of repressed memories; fear of intimacy; shame; and self-esteem issues.  These injuries have been extensive and ongoing, despite substantial good faith and continuing efforts by Plaintiff to work with medical and mental health professionals.

53.     Plaintiff, in light of all of the above, sets forth the following:

## Count I
## Negligence

54.     Plaintiff hereby incorporates the allegations in paragraphs 1 through 53, as if fully set forth herein.

55.    This cause of action seeks money damages against Aerotek for the tort of negligence under Florida law.

56.    Aerotek owed Plaintiff duties including the following:  Plaintiff, who was employed by Aerotek, was an invitee of Aerotek, and Aerotek owed her the enhanced duties owed invitees; Aerotek also owed her duties of care as her employer, including the duty to provide a safe and secure workplace for her workplace activities, the duty to train, oversee, and retain supervisors who exercise their supervisory and other powers in a reasonable manner; the duty to design, implement, and maintain effective training, reporting, and disciplinary processes relating to identifying, preventing, discouraging, and remediating misconduct at the workplace and/or at work events for Aerotek employees; and the duty to design, implement, and maintain functional systems of oversight of its supervisors, like Smith, who wielded authority over subordinates like Plaintiff.  Aerotek also, having determined to create, administer, and undertake the company policy pled at and after paragraph 9 above, owed Plaintiff, who was among the class of persons subject to that policy by Aerotek design (and within a foreseeable-to-Aerotek zone of risk of workplace harm arising out of that policy), a reasonable duty of care in its creation and administration of that policy.

57.    Aerotek breached its duties owed to Plaintiff for reasons including: (1) Aerotek declined to ensure that the Office and Aerotek-related work events

were safe and secure for employees and invitees; (2) Aerotek declined to design, implement, and maintain effective training, reporting, and recordkeeping processes relating to identifying, preventing, discouraging, and remediating workplace and/or work event misconduct at Aerotek; and (3) Aerotek designed and administered its policy pled at and after paragraph 9 in a manner that increased the risk of harm to Plaintiff, and in fact resulted in harm to Plaintiff due to her reliance on the policy.

58.     The above breaches each and together were direct and proximate causes of the injuries suffered by Plaintiff pled herein.  Moreover, these breaches were so reckless as to constitute a conscious disregard or indifference to the rights, safety, and privacy of Plaintiff and, more broadly, employees and other invitees of Aerotek.

59.     As a result of Aerotek's breaches, Plaintiff suffered and continues to suffer substantial injuries.

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Aerotek for compensatory damages and consequential damages, as well as exemplary and punitive damages, in an amount to be determined at trial, as well as interest, costs, and for such further and other relief as this Court may deem necessary and appropriate.

## Count II
## Negligent Misrepresentation

60.     Plaintiff hereby incorporates the allegations in paragraphs 1 through 53, as if fully set forth herein.

61.     This cause of action seeks money damages against Aerotek for the tort of negligent misrepresentation.

62.     Prior to July 18, 2019, Aerotek made statements concerning material facts to Plaintiff – including statements that (1) it maintained effective processes for employee reporting of work-related sexual misconduct, and (2) its policy promoting employee socializing, team building etc. pled at and after paragraph 9 above, would benefit employees such as Plaintiff, and should be followed by Plaintiff for the benefit of her Aerotek career – that Aerotek believed to be true but was which in fact false, and which caused Plaintiff to, among other things, accept Smith's offer to attend a work-related event with him on July 18, 2019; as well as to subsequently report to Aerotek Smith's circa July 18, 2019, work-related sexual misconduct against her.

63.     Aerotek should have known that these statements were false.

64.     In making these statements, Aerotek intended or expected that Plaintiff would rely on them.

65.     Plaintiff justifiably relied on these false statements.

66.     These false statements directly and proximately damaged Plaintiff.

14

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Aerotek for compensatory damages and consequential damages, and exemplary and punitive damages, in an amount to be determined at trial, as well as interest, costs, and for such further and other relief as this Court may deem necessary and appropriate.

## Count III
### Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)

67.     Plaintiff hereby incorporates the allegations in paragraphs 1 through 53, as if fully set forth herein.

68.     This cause of action seeks money damages against Aerotek for violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

69.     Plaintiff appropriately exhausted all administrative requirements to the bringing of this Count.  Plaintiff filed a timely Charge with the EEOC circa October 17, 2019.  The EEOC issued a Notice of Right to Sue to Plaintiff and her counsel that was signed and dated July 30, 2021.

70.     Plaintiff is a member of protected classes under 42 U.S.C. § 2000e-2(a).

71.     Aerotek is a "person" and an "employer" under 42 U.S.C. § 2000e(a)-(b).

72.     Aerotek engaged in unlawful employment practices in Hillsborough County, Florida, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), as pled herein, including by:

15

a.   Discriminating against Plaintiff on the basis of her sex, female, by subjecting her to sexual harassment and violence by an Aerotek supervisor, Smith, that created a hostile work environment.  Smith engaged in many offensive acts, as pled herein, including but not limited to Smith's acts of sexual misconduct against Plaintiff set forth above.

b.   Discriminating against Plaintiff on the basis of her sex, female, by failing to exercise reasonable care to prevent and/or promptly correct Smith's sexual harassment of Plaintiff, and deficiently addressing Smith's sexual harassment after Plaintiff's complaints to Aerotek.

c.   Discriminating against Plaintiff on the basis of her race and national origin, and sex, by investigating Plaintiff's complaints against Smith in a defective – including an admittedly discriminatory – manner that further created and aggravated a hostile work environment for Plaintiff.

73.    The effect of the practices complained of and pled herein has been to deprive Plaintiff of equal employment opportunities, and otherwise adversely affect her status as an employee, and the terms, conditions, and privileges of her employment, because of her race, national origin, and sex; as well, these practices caused Plaintiff to be subjected to gender-based sexual harassment and a gender-

16

based, as well as race- and national origin-based, hostile work environment. Moreover, as a result of the above-pled misconduct and hostile work environment, Plaintiff was forced to resign from her employment with Aerotek.

74.     Aerotek's discriminatory and harassing statements, practices, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

75.     Moreover, including after Plaintiff reported Smith's sexual harassment and misconduct to Aerotek, Aerotek had actual or constructive knowledge of prior and ongoing harassment toward Plaintiff, and the power to stop such harassment, yet failed to take prompt and appropriate remedial action to prevent or correct further harassment of Plaintiff.  Furthermore, the harassment was so open (including due to Aerotek's defective investigation of Plaintiff's report) that a reasonable employer would have had to have been aware of it.

76.     The unlawful employment practices complained of herein were intentional, or were done with malice or with reckless indifference to the federally protected rights of Plaintiff.  Plaintiff invokes her right of recovery under Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

77.     Plaintiff suffered substantial and ongoing damages as a result of Aerotek's conduct, policies, patterns, and/or practices in violation of this statute.

WHEREFORE, Plaintiff respectfully requests that this Court (1) grant a permanent injunction enjoining Aerotek, its officers, successors, assigns, and all persons in active concert or participation with it from engaging in any employment practice which discriminates on the basis of sex, race, or national origin; (2) order Aerotek to institute and carry out policies, practices, and programs which provide equal employment opportunities for female and/or Hispanic applicants and employees, and which eradicate the effects of its past unlawful employment practices; (3) order Aerotek to make whole Plaintiff by providing Plaintiff with front pay in lieu of reinstatement, and back pay with prejudgment interest, in amounts to be determined at trial; (4) order Aerotek to make whole Plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above and herein, in amounts to be determined at trial; (5) order Aerotek to make whole Plaintiff by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above and herein, including but not limited to, pain and suffering, mental anguish, humiliation, embarrassment, emotional distress, anxiety, inconvenience, reputational harm, and loss of enjoyment of life, in amounts to be determined at trial; (6) order Aerotek to pay Plaintiff punitive damages for its malicious conduct or reckless indifference described and referenced above and herein, in amounts to be determined at trial; (7) grant such further relief as the Court deems necessary and

proper in the public interest; (8) award reasonable attorney fees and related costs in this action under 42 U.S.C. § 2000e-5(k).

**Count IV**
**Section 703(a) of Title VII, 42 U.S.C. § 2000e-3(a)**

78.    Plaintiff hereby incorporates the allegations in paragraphs 1 through 53, and 69-71, as if fully set forth herein.

79.    This cause of action is brought against Aerotek for money damages under 42 U.S.C. § 2000e-3(a).

80.    Plaintiff engaged in protected activity when she complained to Aerotek of gender-based, work-related sexual harassment.

81.    In retaliation for Plaintiff's complaints, Aerotek took adverse actions against Plaintiff, including by undertaking a knowingly defective and discriminatory, and knowingly or recklessly open and notorious, investigation of her claims, and thereby creating and aggravating a harmful and hostile work environment for Plaintiff, in the manner pled herein; in so doing Aerotek created intolerable and illegal employment requirements that Plaintiff was forced to endure for several weeks and then, ultimately, could escape only by terminating her employment with Aerotek.

82.    There was a causal connection between Plaintiff's complaints and the materially adverse actions taken against Plaintiff by Aerotek.

83.    The retaliation endured by Plaintiff would dissuade a reasonable employee from making complaints of discrimination and harassment.

19

84.     Aerotek retaliated against Plaintiff for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).  Aerotek acted willfully, intentionally, with malice, and/or with reckless indifference to the rights of Plaintiff.

85.     Plaintiff suffered substantial and ongoing damages as a result of Aerotek's conduct in violation of this statute.

WHEREFORE, Plaintiff respectfully requests that this Court (1) grant a permanent injunction enjoining Aerotek, its officers, successors, assigns, and all persons in active concert or participation with it from engaging in any employment practice which retaliates against employees who complain about sexual harassment; (2) order Aerotek to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees who exercise their federally protected rights to complain about sexual harassment, and which eradicate the effects of its past unlawful employment practices; (3) order Aerotek to make whole Plaintiff by providing Plaintiff with front pay in lieu of reinstatement, and back pay with prejudgment interest, in amounts to be determined at trial; (4) order Aerotek to make whole Plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above and herein, in amounts to be determined at trial; (5) order Aerotek to make whole Plaintiff by providing compensation for past and future nonpecuniary losses resulting from the

20

unlawful employment practices described above and herein, including but not limited to, pain and suffering, mental anguish, humiliation, embarrassment, emotional distress, anxiety, inconvenience, reputational harm, and loss of enjoyment of life, in amounts to be determined at trial; (6) order Aerotek to pay Plaintiff punitive damages for its malicious conduct or reckless indifference described and referenced above and herein, in amounts to be determined at trial; (7) grant such further relief as the Court deems necessary and proper in the public interest; (8) award reasonable attorney fees and related costs in this action under 42 U.S.C. § 2000e-5(k).

### Count V
### Florida Civil Rights Act of 1992, Fla. Stat. Sec. 760.01 *et seq.*, 760.10(1)

86.     Plaintiff hereby incorporates the allegations in paragraphs 1 through 53, as if fully set forth herein.

87.     The FCRA, including at Fla. Stat. Sec. 760.10(1), makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's sex, race, and/or national origin.

88.     Plaintiff is a member of protected classes under the FCRA.

89.     Plaintiff appropriately exhausted all administrative requirements to the bringing of this Count.  Plaintiff filed a timely Charge of Discrimination with the EEOC circa October 17, 2019; her Charge was automatically dual-filed with the Florida Commission on Human Relations ("FHCR") as of that same date per the Work-Sharing agreement between the EEOC and FHCR.  Moreover,

21

Plaintiff's Charge of Discrimination expressly named/listed both the EEOC and FHCR.  More than 180 days have passed since the filing of Plaintiff's Charge of Discrimination, and the FHCR issued no findings.

90.     Plaintiff was subjected to unwelcome harassment on the basis of her sex, and discrimination on the basis of her sex, race, and national origin, by and at Aerotek, including as a material consequence of workplace and reporting policies created and administered by Aerotek.

91.     The harassment and discrimination suffered by Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment with Aerotek.

92.     Aerotek failed to intervene or take prompt and effective remedial action, despite and after being on notice of Smith's misconduct towards Plaintiff at and in connection with an Aerotek event.

93.     Aerotek acted with reckless disregard for Plaintiff's protected rights in connection with the sexual harassment and misconduct, and sex-, race-, and national origin-based discrimination suffered by Plaintiff pled herein.

94.     Plaintiff was injured due to Aerotek's violations of the FCRA, for which Plaintiff is entitled to relief.

WHEREFORE, Plaintiff respectfully requests that this Court (1) order Aerotek to make whole Plaintiff by providing Plaintiff with front pay in lieu of reinstatement, and back pay with prejudgment interest, in amounts to be

determined at trial; (2) order Aerotek to make whole Plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above and herein, in amounts to be determined at trial; (3) order Aerotek to make whole Plaintiff by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above and herein, including but not limited to, pain and suffering, mental anguish, humiliation, embarrassment, emotional distress, anxiety, inconvenience, reputational harm, and loss of enjoyment of life, in amounts to be determined at trial; (4) order Aerotek to pay Plaintiff punitive damages, pending appropriate motions, for its malicious conduct or reckless indifference described and referenced above and herein, in amounts to be determined at trial; (5) prejudgment interest on all monetary recovery obtained, as appropriate; (6) grant such further relief as the Court deems necessary and proper in the public interest; (7) award reasonable attorney fees and related costs in this action under Fla. Stat. Sec. 760.11(5).

## Count VI
**Florida Civil Rights Act of 1992, Fla. Stat. Sec. 760.01 *et seq.*, 760.10(7)**

95.    Plaintiff hereby incorporates the allegations in paragraphs 1 through 53, and 88-89, as if fully set forth herein.

96.    The FCRA, including at Fla. Stat. Sec. 760.10(7), makes it unlawful for an employer to discriminate against any person because that person has

opposed any practice which is an unlawful employment practice under the FCRA.

97.     Plaintiff engaged in protected activity when she complained to Aerotek of gender-based, work-related sexual harassment and misconduct.

98.     In retaliation for Plaintiff's complaints, Aerotek took adverse actions against Plaintiff, including by undertaking a knowingly defective and discriminatory, and knowingly or recklessly open and notorious, investigation of her claims, and thereby creating and aggravating a harmful and hostile work environment for Plaintiff, in the manner pled herein, and in so doing Aerotek created intolerable and illegal employment requirements that Plaintiff was forced to endure for several weeks and then, ultimately, could escape only by terminating her employment with Aerotek.

99.     There was a causal connection between Plaintiff's complaints and the materially adverse actions taken against Plaintiff by Aerotek.

100.    The retaliation endured by Plaintiff would dissuade a reasonable employee from making complaints of discrimination and harassment.

101.    Aerotek retaliated against Plaintiff for engaging in protected activity in violation of the FCRA.

102.    Plaintiff was injured due to Aerotek's violations of the FCRA, for which Plaintiff is entitled to relief.

WHEREFORE, Plaintiff respectfully requests that this Court (1) order Aerotek to make whole Plaintiff by providing Plaintiff with front pay in lieu of reinstatement, and back pay with prejudgment interest, in amounts to be determined at trial; (2) order Aerotek to make whole Plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above and herein, in amounts to be determined at trial; (3) order Aerotek to make whole Plaintiff by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above and herein, including but not limited to, pain and suffering, mental anguish, humiliation, embarrassment, emotional distress, anxiety, inconvenience, reputational harm, and loss of enjoyment of life, in amounts to be determined at trial; (4) order Aerotek to pay Plaintiff punitive damages, pending appropriate motions, for its malicious conduct or reckless indifference described and referenced above and herein, in amounts to be determined at trial; (5) prejudgment interest on all monetary recovery obtained, as appropriate; (6) grant such further relief as the Court deems necessary and proper in the public interest; (7) award reasonable attorney fees and related costs in this action under Fla. Stat. Sec. 760.11(5).

## Request for Trial by Jury

Plaintiff respectfully requests trial by jury on all issues so triable.

## Reservation of Rights

Plaintiff reserves the right to further amend this Complaint, upon completion of her investigation and pending further discovery, to assert any additional claims for relief against Aerotek or other parties as may be warranted under the circumstances, and as allowed by law, including, if warranted, with respect to causes of action founded on Aerotek's vicarious liability, which Plaintiff has determined to reserve at the present time.

Dated:  October 28, 2021                                    Respectfully submitted,


| */s/ Leighton Leib* | */s/ David Knox* | */s/ Gregory L. Henderson* |
|---|---|---|
| LEIGHTON LEIB | DAVID KNOX | GREGORY L. HENDERSON |
| Florida Bar No. 119263 | Florida Bar No. 93779 | Florida Bar No. 88207 |
| lleib@knoxleib.com | dknox@knoxleib.com | greg@greghendersonlaw.com |
| **KNOX♦LEIB, PLLC.** | **KNOX♦LEIB, PLLC** | **Law Office of** |
| | | **Gregory L. Henderson, Esq.** |

420 W. Platt Street
Tampa, Florida 33606
(813) 251-1844

*Attorneys for Plaintiff*

26

## **VERIFICATION, OATH**

Under penalties of perjury, I declare that I have made and read the foregoing Complaint, and that the facts stated in it are true.

*Andrea Ramirez*
_____
Andrea Ramirez Perez